```
              UNITED STATES BANKRUPTCY COURT
             MIDDLE DISTRICT OF NORTH CAROLINA
                      DURHAM DIVISION
```

IN RE:                              )
                                    )
LEE MEMORY GARDENS, INC.,           )   CASE NO. 02-82662
                                    )
        Debtor.                     )
_____)
                                    )
CHARLES M. IVEY, III, TRUSTEE       )
FOR THE BANKRUPTCY ESTATE           )
OF LEE MEMORY GARDENS, INC.,        )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )   ADVERSARY  NO. 04-9025
                                    )
CROWN MEMORIAL PARK, LLC.,          )
                                    )
        Defendant.                  )

## MEMORANDUM OPINION

This adversary proceeding came before the court on August 25, 2005, for hearing upon the defendant's motion for summary judgment. Robert S. Adden, Jr. appeared on behalf of the defendant and Robert L. McClellan appeared on behalf of the plaintiff. After considering the arguments of counsel, the evidence submitted by the parties and the applicable law, the court concludes for the reasons that follow that the motion should be denied.

## STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Celotex v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary

judgment has the initial burden of proving that there is no genuine issue as to any material fact.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 161 (1970).  Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion.  Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts").  The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 252 (1986).  In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

BACKGROUND

Lee Memory Gardens, Inc. ("Lee") was the owner and operator of a cemetery located in Sanford, North Carolina.  The business of Lee included the sale of burial vaults to persons who purchased lots in Lee's cemetery.  Lee was required by State regulations to keep an inventory of vaults on hand for customers who had purchased or were

in the process of purchasing vaults from Lee.  In October of 2001, Lee had some 500 unused vaults located on its property.

The defendant, Crown Memorial Park ("Crown"), also operated a cemetery.  During the year 2000, Crown purchased a large number of vaults from Heritage Burial Products ("Heritage").  Heritage had a place of business in Sanford and was owned by the spouse of Lee's sole shareholder.  The vaults purchased by Crown were not delivered at the time of purchase.  Instead, Heritage was supposed to store the vaults until Crown requested delivery.  A dispute arose between Crown and Heritage in 2001 when Heritage failed to deliver vaults requested by Crown.  Crown filed suit against Heritage and on October 4, 2001, obtained a court order that authorized Crown to take possession of the vaults located on Lee's property.  Lee was not a party to the suit filed by Crown.  Nonetheless, on October 8, 2001, Crown removed 383 of the vaults from Lee's property pursuant to the court order obtained by Crown.

In June of 2002, the North Carolina Cemetery Commission instituted a proceeding that resulted in Lee being placed in receivership.  Thereafter, in August of 2002, Lee filed for relief under chapter 7 and the Plaintiff was named as chapter 7 trustee for Lee.  This adversary proceeding was filed on July 28, 2004. The complaint alleges that the 383 vaults removed from Lee's property by Crown were owned by Lee and that Lee received no payment or other consideration from Crown when the vaults were

removed.  Based upon these allegations, the Plaintiff asserts a claim pursuant to section 548 to avoid the transfer of the vaults as a fraudulent transfer and a claim alleging conversion of the vaults by Crown.  The Plaintiff also alleges a claim against Crown for aiding and abetting officers of Lee in breaching their fiduciary duties to Lee.

## ANALYSIS

In its motion for summary judgment, Crown asserts that Lee never had any ownership interest in the 383 burial vaults that were removed from the premises of Lee Memory Gardens.  Consequently, Crown argues, the Plaintiff cannot maintain any of the claims asserted against Crown.  Moreover, Crown asserts that the record is devoid of any evidence that Crown aided or abetted a breach of fiduciary duty when Lee's president and sole shareholder, Linda Roberts, agreed to allow Crown to take possession of the 383 burial vaults located on the premises of Lee Memory Gardens.  On the other hand, the Plaintiff argues – and the court agrees – that genuine issues of material fact remain to be resolved at trial over the ownership of the burial vaults and as to whether Crown aided and abetted a breach of fiduciary duty by one or more officers of Lee.

### A. Ownership of the Burial Vaults

As argued by Crown, before the Plaintiff can maintain an action on behalf of the bankruptcy estate to recover the burial vaults or their value, he must show that Lee held an ownership

interest in the vaults when they were removed by Crown. The ownership of the vaults involves an issue that is controlled by state law. "In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." Barnhill v. Johnson, 503 U.S. 393, 398 (1992).

The state law that is controlling in this proceeding is the law of North Carolina, the only state with any connection to the parties and transactions involved in this proceeding. Under the common law of North Carolina, "[t]here is no doubt that the possession of a chattel is prima facie evidence of ownership . . . ." Pate v. Hazell, 11 S.E. 1089, 1089 (N.C. 1890). See also Barwick v. Barwick, 33 N.C. 80, 81-82 (N.C. 1850) ("For the possession of personal property is prima facie evidence of title, and in the absence of any proof to rebut this presumption, the person in possession is taken to be the owner and can recover the full value."); John V. Orth, Russsel v. Hill (N.C. 1899) Misunderstood Lessons, 73 N.C.L. Rev. 2031, 2042 (1995) ("Prior North Carolina decisions were very clear that to recover in trover a plaintiff had to show both title and possession. Although possession raised a presumption of title, it was a presumption rebuttable by a clear showing of title in another.").

It is undisputed that the vaults in question were located on Lee's property and in its possession before they were taken by Crown. Hence, the Plaintiff has the benefit of a presumption that

the vaults were owned by Lee.  Crown argues that it nonetheless is entitled to summary judgment because it has produced evidence that overcomes the presumption as a matter of law.  This argument would have merit if the record in this case consisted of uncontradicted evidence that showed conclusively that Lee did not own the vaults that were removed from its property by Crown.  See Aldridge v. Rivas, 312 F.2d 474, 477 (D.C. Cir. 2002) (rebuttable presumption could be overcome and summary judgment granted if movant produced "uncontradicted and conclusive" evidence).  While Crown did produce substantial evidence that the vaults had not been purchased by Lee and were merely being stored on Lee's property, it cannot be said that such evidence was uncontradicted or conclusive because the Trustee offered opposing evidence tending to show that Lee did own the vaults.  For example, the Trustee produced evidence that Lee, in the ordinary course of its business, bought and stored vaults on behalf of its customers.  There also was evidence that North Carolina Cemetery Commission records reflect that Lee had 816 vaults as of July 30, 2001, and that 580 of those vaults were being held in trust for the customers of Lee.  There also was evidence that rather than treating the vaults as stored property, employees of Lee Memory Gardens used the vaults on Lee's premises as company inventory and were not aware of any other ownership interest in the vaults.  There was additional evidence that during an earlier, failed attempt by Crown to take vaults from Lee's premises, Linda

Roberts told the sheriff that the only vaults on Lee's property belonged to Lee Memory Gardens.  Under the standard applicable in this summary judgment motion, the court is required to accept the Plaintiff's evidence as true and to give the Plaintiff the benefit of every reasonable inference to be drawn from this evidence.  When the evidence is viewed in this light and the presumption of ownership is taken into account, the court is satisfied that there is a genuine issue of fact regarding the ownership of the vaults and that such issue of fact precludes the granting of summary judgment as to the fraudulent conveyance and conversion claims.

      B. Breach of Fiduciary Duty

In Count IV of the complaint, the Plaintiff alleges that Derek and Linda Roberts, officers and/or board members of Lee, breached their fiduciary duties to Lee by causing vaults owned by Lee to be transferred to Crown in order to satisfy the obligation of another entity.  The Plaintiff argues that Crown is liable for aiding and abetting that breach of fiduciary duties by the officers of Lee.

"North Carolina law recognizes a cause of action for aiding and abetting breach of fiduciary duty."  <u>Moseley v. Arth (In re Vendsouth, Inc.)</u>, 2003 Bankr. LEXIS 1437 at *49 (Bankr. M.D.N.C. Oct. 9, 2003).  The tort of aiding and abetting a breach of fiduciary duty has three elements: "(1) the existence of a [violation of a fiduciary duty] by the primary party; (2) knowledge of the violation on the part of the aider and abettor; and

(3) substantial assistance by the aider and abettor in the achievement of the primary violation." Blow v. Shaughnessy, 364 S.E.2d 444, 447 (N.C. Ct. App. 1988).  See also Equitable Life Assurance Soc'y of the United States v. American Bankers Ins. Co., No. 88-535, 1995 U.S. Dist. LEXIS 10880 at *32-34 (E.D.N.C. May 12, 1995) (same); Vendsouth, Inc., 2003 Bankr. LEXIS at *49 (same).

An alleged aider and abettor must have actual knowledge of the breach of the fiduciary's duty. Vendsouth, Inc., 2003 Bankr. LEXIS at *51-52 ("[A]ctual knowledge of a breach of fiduciary duty must be shown in order to establish a claim for aiding and abetting breach of fiduciary duty."); Sompo Japan Ins., Inc. v. Deloitte & Touche, LLP, No. 03-CVS-5547, 2005 NCBC 2 at*11-12 (N.C. Sup. Ct. June 10, 2005) ("[T]here is not a lower level of culpability or scienter for aiding and abetting [a breach of a fiduciary duty] than for the underlying tort.").  Having "knowledge" of something means "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." Black's Law Dictionary 888 (8th ed. rev. 2004).

Taken in the light most favorable to the Plaintiff, the evidence is sufficient to support an inference that Crown did have knowledge that Linda Roberts was breaching a fiduciary duty by allowing Crown to take burial vaults from the premises of Lee Memory Gardens in order to satisfy their personal obligations.  The

evidence relied upon by the Trustee includes evidence that Crown was aware of a statement made by Linda Roberts on August 6, 2001, during a failed attempt by Crown to pick up vaults from Lee Memory Gardens in which Linda Roberts stated that the only vaults located at Lee Memory Gardens belonged to Lee Memory Gardens.  Crown also was aware that Lee Memory Gardens was not a party to the suit in which the order for possession was issued and that Crown had no claim or judgment against Lee.  Finally, it is a justifiable inference from the evidence that, notwithstanding such knowledge, Crown and Ms. Roberts cooperated in providing for the removal of the 383 vaults from the premises of Lee Memory Gardens.  It follows that summary judgment is not appropriate as to the aiding and abetting claim.

## CONCLUSION

In accordance with the foregoing, an order will be entered contemporaneously with the filing of the memorandum opinion denying Crown's motion for summary judgment.

PARTIES TO BE SERVED

Robert L. McClellan, Esq.
P.O. Box 3324
Greensboro, NC 27402

Robert S. Adden, Jr., Esq.
831 East Morehead Street
Suite 860
Charlotte, NC 28202

Michael D. West
Bankruptcy Administrator