```
              UNITED STATES BANKRUPTCY COURT
              MIDDLE DISTRICT OF NORTH CAROLINA
                       DURHAM DIVISION

IN RE:                          )
                                )
Lee Memory Gardens, Inc.,       )   Case No. 02-82662
                                )
          Debtor.               )
                                )
_____)
                                )
Charles M. Ivey, III, Trustee   )
for the Bankruptcy Estate of    )
Lee Memory Gardens, Inc.,       )
                                )
          Plaintiff,            )
                                )
vs.                             )   Adversary No. 04-9025
                                )
Crown Memorial Park, LLC.,      )
                                )
          Defendant.            )
                                )
```

<u>MEMORANDUM OPINION</u>

This adversary proceeding came before the court for trial on February 1, 2006.  Charles M. Ivey, III and Robert L. McClellan appeared on behalf of the plaintiff and Robert S. Adden, Jr. appeared on behalf of the defendant.  Having considered the evidence offered by the parties and the arguments of counsel, the court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure and Rule 7052 of the Federal Rules of Bankruptcy Procedure.

NATURE OF CONTROVERSY

The plaintiff in this adversary proceeding is Charles M. Ivey, III, the Chapter 7 Trustee for Lee Memory Gardens, Inc.  The plaintiff has alleged claims for fraudulent conveyance, conversion

and aiding and abetting breach of fiduciary duties.  All of these
claims involve a large number of funeral vaults that were stored on
the property of Lee Memory Gardens when they were removed by the
defendant on October 8, 2001.

JURISDICTION

The court has jurisdiction over the subject matter of this
proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the
General Order of Reference entered by the United States District
Court for the Middle District of North Carolina on August 15, 1984.
This is a core proceeding within the meaning of 28 U.S.C.
§ 157(b)(2)(E) and (H) which this court may hear and determine.

FACTS

Lee Memory Gardens, Inc. ("Lee") was the owner and operator of
a cemetery located in Sanford, North Carolina.  The business of Lee
included the sale of burial vaults to persons who purchased lots in
Lee's cemetery.  Lee was required by State regulations to keep an
inventory of vaults on hand for customers who had purchased or were
in the process of purchasing vaults from Lee.  In early October of
2001, Lee had some 500 unused vaults stored on its property.

The defendant, Crown Memorial Park ("Crown"), also operated a
cemetery.  Prior to October of 2001, Crown purchased a large number
of vaults from Heritage Burial Products ("Heritage").  Heritage had
a place of business in Sanford and was owned by the spouse of Lee's
sole shareholder.  The vaults purchased by Crown were not delivered

at the time of purchase.  Instead, Heritage was supposed to store the vaults until Crown requested delivery.  A dispute arose between Crown and Heritage in 2001 when Heritage failed to deliver vaults requested by Crown.  Crown filed suit against Heritage and on October 4, 2001, obtained a court order that authorized Crown to take possession of the vaults located on Lee's property.  Lee was not a party to the suit filed by Crown.  Nonetheless, on October 8, 2001, Crown removed 383 of the vaults from Lee's property pursuant to the court order obtained by Crown.

In June of 2002, the North Carolina Cemetery Commission instituted a proceeding that resulted in Lee being placed in receivership.  Thereafter, in August of 2002, Lee filed for relief under Chapter 7 and the plaintiff was named as Chapter 7 Trustee for Lee.  This adversary proceeding was filed on July 28, 2004. The complaint alleges that the 383 vaults removed from Lee's property by Crown were owned by Lee and that Lee received no payment or other consideration from Crown when the vaults were removed.  Based upon these allegations, the plaintiff asserts a claim pursuant to section 548 to avoid the transfer of the vaults as a fraudulent transfer and a claim alleging conversion of the vaults by Crown.  The plaintiff also alleges a claim against Crown for aiding and abetting officers of Lee in breaching their fiduciary duties to Lee.

3

ANALYSIS

I. The Claims under Section 548.

Under section 548(a)(1)(A), a trustee may avoid any transfer of an interest of the debtor in property made within one year[1] of the filing of the petition if the debtor made such transfer with actual intent to hinder, delay, or defraud creditors. This provision requires proof of actual intent to defraud. However, no showing of actual fraud is required under section 548(a)(1)(B). Under section 548(a)(1)(B), a trustee may recover without establishing actual fraud. In order to avoid a transfer under section 548(a)(1)(B), a trustee must establish that (1) the debtor had an interest in the property transferred; (2) the interest was transferred within one year of the filing of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) the debtor received less than a reasonably equivalent value in exchange for such transfer. See In re Gutpelet, 137 F.3d 748, 751 (3d Cir. 1998); Pension Transfer Corp. v. Beneficiaries, 319 B.R. 76 (D. Del. 2005); In re Maine Poly, Inc., 317 B.R. 1 (Bankr. D. Me. 2004); In re Dunbar, 313 B.R. 430, 434 (Bankr. C.D. Ill. 2004).

---

[1]The 2005 amendment to section 548 which increased the reach-back period under section 548 to two years is not applicable in this proceeding which already was pending when the amendment was adopted.

A. Burden of Proof.

While the courts are in agreement that the plaintiff has the burden of proof in an action under section 548, there is a split of authority regarding the standard of proof required in such proceedings. Some courts have applied the enhanced "clear and convincing" standard. E.g., Osen v. Bernatovich (In re National Safe Northeast, Inc., 76 B.R. 896, 901 (Bankr. D. Conn. 1987). Other courts, in what appears to be a majority view, have concluded that the trustee in a proceeding under section 548(a)(1), has the burden of establishing the claim by a preponderance of the evidence. See Baldi v. Lynch (In re Mac Cook Metals, L.L.C.), 319 B.R. 570, 587, n.11 (Bankr. N.D. Ill. 2005); Stillwater Nat'l Bank & Trust Co. v. Kirtley (In re Solomon), 300 B.R. 57, 62-63 (Bankr. D. Okla. 2002), aff'd 299 B.R. 626 (10th Cir. BAP 2003); Thompson v. Janovich (In re Food & Fibre Protection, Ltd.), 168 B.R. 408, 418 (Bankr. D. Ariz. 1994); Western Wire Works, Inc. v. Lawler (In re Lawler), 141 B.R. 425, 428 (9th Cir. BAP 1992); In re Uhlmeyer, 67 B.R. 977, 980 (Bankr. D. Ariz. 1986). Many of the cases applying the preponderance standard rely upon the reasoning of the Supreme Court in Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), where the Court concluded that a preponderance of the evidence standard is the appropriate level of proof in dischargeability actions based on fraud under section 523(a)(2) of the Bankruptcy Code. This court agrees with the courts that have

5

concluded that the reasoning applied by the Court in <u>Grogan v. Garner</u> is equally applicable in fraud actions under section 548 and, therefore, will utilize the preponderance of the evidence standard in this proceeding with respect to the plaintiff's claims under section 548.

B. Claim under Section 548(a)(1)(A).

The evidence adduced by the Plaintiff in this proceeding was insufficient to establish actual intent to hinder, delay, or defraud creditors on the part of the Debtor. To the contrary, the transfer that occurred when Crown removed the burial vaults from the Debtor's property was not even consented to by the Debtor and certainly did not involve fraudulent intent on the part of the Debtor. While there was evidence of malevolent intent on the part of Lee's shareholder and president regarding the turnover of the vaults, the evidence did not show that she was acting on behalf of the Debtor in agreeing to the order that permitted the defendant to take the vaults nor any other grounds for finding fraudulent intent on the part of the Debtor. Consequently, the plaintiff is not entitled to relief under section 548(a)(1)(A).

C. Claim under Section 548(a)(1)(B).

The first element that must be shown under section 548(a)(1)(B) is that the transaction in question involved a transfer of a property interest of the debtor. The parties are in sharp disagreement regarding this element of the plaintiff's claim.

The plaintiff maintains that this element has been satisfied because the burial vaults in question were owned by Lee. The defendant vehemently denies that the vaults were owned by Lee. According to the defendant, the vaults in question were owned by it or Heritage or by the pre-need customers of Lee who had paid for vaults prior to October of 2001.

Whether and to what extent the Debtor had an interest in the burial vaults is a question to be determined under state law. See Barnhill v. Johnson, 503 U.S. 393, 398 (1992)("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."); In re FBN Food Service, Inc., 185 B.R. 265, 273 (N.D. Ill. 1995)("Although the term 'property' is defined by reference to federal law, a determination of the debtor's legal or equitable interest in such property must be made according to state law."); In re Universal Clearing House Co., 62 B.R. 118, 122 (D. Utah 1986)(since Bankruptcy Code does not define "an interest of the debtor in property" the bankruptcy court "must resort to nonbankruptcy law to determine whether payments to the defendants were transfers of the debtor's 'property.'").

The state law that is controlling in this proceeding is the law of North Carolina, the only state with any connection to the parties and transactions involved in this proceeding. Under the common law of North Carolina, "[t]here is no doubt that the possession of a chattel is prima facie evidence of

ownership . . . ." <u>Pate v. Hazell</u>, 11 S.E. 1089, 1089 (N.C. 1890). <u>In accord</u>, <u>Beaman v. Ward</u>, 132 N.C. 68, 69 (1903); <u>Adrian v. McCaskill</u>, 103 N.C. 182, 186 (1889); <u>Jackson v. Love</u>, 82 N.C. 405, 408 (1880); <u>Barwick v. Barwick</u>, 33 N.C. 80, 81-82 (N.C. 1850) ("For the possession of personal property is prima facie evidence of title, and in the absence of any proof to rebut this presumption, the person in possession is taken to be the owner and can recover the full value."). The rule adopted in North Carolina has been widely accepted in other jurisdictions, as well. <u>See</u> 29 Am Jur 2d <u>Evidence</u> § 289 (1994)(citing numerous cases in support of the conclusion that "[a]s a general rule, proof of possession of personal property is prima facie evidence of title or is said to raise a presumption of ownership, which may be rebutted or overcome by evidence of ownership in another, or by evidence of the circumstances surrounding the possession.").

It is undisputed that the burial vaults in question were located on Lee's property and in its possession before they were taken by Crown. Hence, the plaintiff has the benefit of a presumption that the vaults were owned by Lee. Crown argues that it produced evidence that was sufficient to overcome and rebut the presumption of ownership. Crown argues that the vaults that were removed from the Debtor's premises were being stored on the property by Heritage and not the Lee. In support of this argument the defendant produced documents which indicated that during the

8

years 1997, 1998 and 1999 Heritage did purchase a large number of Polyguard vaults from the manufacturer in Wyoming and that the shipping destination shown on the documents for those vaults was 2600 Hawkins Avenue in Sanford, which was the address for Lee's cemetery. However, there was no evidence as to whether the vaults were actually delivered to Lee's premises or, if they were delivered to Lee's premises, how long the 1997, 1998 and 1999 vaults remained on the Debtor's property. Also, the evidence established that Heritage had a separate place of business at Landis and Winfield Street in Sanford and that Heritage had its own locations at which vaults were stored. In fact, in September of 1998, when Heritage employed an accountant to provide Crown with a certification regarding the number of vaults that Heritage had in storage for the defendant, the accountant certified that the defendant's 807 vaults were stored at the "Cameron storage facility" rather than at 2600 Hawkins Avenue, the address for Lee's cemetery. There was no evidence to suggest that Lee's cemetery was ever known as the "Cameron storage facility" or that Lee had a facility in the town of Cameron.

The defendant relies heavily on the fact that the Trustee was not able to produce any records showing that the Debtor purchased the number of vaults that were located on its property on October 8, 2001. The defendant argues that if the Debtor did not purchase any vaults, it could not have owned the vaults that were

9

removed on October 8.  The plaintiff does not dispute his inability to produce records that verified purchases by the Debtor, but contends that the lack of such records does not mean that no purchases occurred or that no vaults were acquired by the Debtor. The plaintiff points to the fact that the Debtor was placed in receivership two months before the bankruptcy case was filed and that the books and records of the Debtor were in disarray and were incomplete when the receiver took control of the Debtor.   The Trustee also points to the fact that a break-in occurred at Debtor's offices during the receivership in which some of the Debtor's records were removed.   Given the poor state of the Debtor's records at the time the Trustee was appointed, the absence of business records reflecting purchases of vaults by the Debtor is of little probative value.  Debtor's argument regarding the lack of invoices or payment vouchers also does not take into account the fact that an inter-company transfer could have occurred from Heritage to Lee without the type of documentation that typically would accompany a purchase from an unrelated entity, although Heritage's sister company, Larcon, Inc., which also sold burial vaults, was listed in Lee's bankruptcy schedules as a creditor to whom Lee owed $215,000.00.

In addition to establishing that the vaults were in the possession of Lee, the plaintiff produced other evidence that supported the claim that the vaults were owned by Lee.   The

10

plaintiff showed that in the ordinary course of its business Lee
sold vaults, including sales pursuant to pre-need contracts as well
as on an as-needed basis.  According to the testimony of two former
employees of Lee, the vaults that were located on Lee's property in
2001 were treated as the property of Lee.  According to one of the
employees, when vaults were needed for burials being conducted by
Lee, employees were instructed to use vaults that were stored on
Lee's property.  The vaults thus were treated as Lee's inventory of
vaults.  In addition to needing vaults to use when burial services
were conducted at its cemetery, Lee was required by law to maintain
an inventory of vaults on its property once its surety bond expired
in mid-2001.  This was a requirement monitored by the North
Carolina Cemetery Commission.  In June of 2001, when Lee was
required to certify to the North Carolina Cemetery Commission the
number of vaults that it had stored, the same vaults that later
were removed by Crown, were certified by Lee as being vaults it had
acquired and was storing.  In doing so, Lee employed an accountant
and directed the accountant to count the vaults so that the number
of vaults owned by Lee could be certified to the Cemetery
Commission.

Crown's contention that the vaults located on Lee's property
were owned by customers of Lee or by Crown was not supported by the
evidence.  There was evidence that Lee previously had entered into
some pre-need contracts with customers under which the customers

11

were to pay on an installment basis for their interment at Lee's cemetery. These installment contracts included cemetery spaces, opening and closing the grave and certain merchandise related to funerals such as vaults and grave markers that were to be provided in the future when the customer died. The installment contracts did not refer to or identify any particular burial vault or even any particular type of burial vault. Nor did Crown have a contract that identified any particular vaults. The burial vaults that were located at Lee Memory Gardens were indistinguishable in that they did not have serial numbers or any other indicia that distinguished one burial vault from another. Although the customer contracts and Crown's contract contemplated delivery of vaults by Lee at some point in the future, there was no evidence that any of those vaults had been delivered to a customer or to Crown prior to October 8, 2001, and hence no showing that Lee had completed its performance under the customer contracts or Crown's contract. Further, no evidence was offered that connected any particular customer or customer's contract to any of the vaults that were located at Lee Memory Gardens on October 8, 2001. The same is true of Crown and its contract. Under N.C. Gen. Stat. § 25-2-401, title to goods cannot pass under a contract for sale prior to their identification to the contract. Since none of the burial vaults had been identified to any of the installment contracts or to Crown's contract, no title passed from Lee to its customers and the vaults

remained the property of Lee.  See Lever Bros. Co. v. Centuria Intern., Inc. (In re Centuria Intern., Inc.), 26 B.R. 197 (1st Cir. BAP 1982)(where a manufacturer of pans sold pans to a customer, but retained the pans in its inventory until requested to make shipments, the pans that remained in inventory were not identified to the contract and no title passed to the customer).

As noted earlier, the plaintiff has the benefit of a presumption of ownership arising from Lee having had possession of the vaults.  As a result of such presumption, the defendant had the burden of going forward with the evidence.  In order to satisfy that burden, the defendant was required to introduce evidence sufficient to permit reasonable minds to conclude that the presumed fact did not exist.  Rule 301, North Carolina Rules of Evidence.[2] The defendant carried this burden in that the defendant's evidence was sufficient to permit, but not compel, a fact finder to reasonably conclude that the vaults were not owned by Lee Memory Gardens.  With the presumption of ownership rebutted, the question then becomes whether the plaintiff established by a preponderance of the evidence that the vaults were owned by Lee Memory Gardens. A preponderance of the evidence means an amount of evidence that is sufficient to persuade the finder of fact that a claim or

---

[2]Under Rule 302 of the Federal Rules of Evidence, "the effect of a presumption respecting a fact which is an element of a claim or defense as to which State law supplies the rule of decision is determined in accordance with State law.

contention is more likely true than not true. As applied here, the question is whether the plaintiff's evidence was sufficient to show that it was more likely than not that the burial vaults were owned by Lee Memory Gardens. Having considered and weighed the evidence, the court has concluded that the plaintiff's evidence was sufficient to make such a showing. Hence, the court finds that the plaintiff carried the burden of proving by a preponderance of the evidence that the vaults that were removed from Lee Memory Gardens on October 8, 2001, were the property of the Debtor, Lee Memory Gardens.

The remaining elements under section 548(a)(1)(B) were not sharply disputed, and the court finds that the plaintiff established the remaining elements of a section 548(a)(1)(B) fraudulent conveyance claim by a preponderance of the evidence. The "transfer" in question occurred when Crown took possession of 383 of the vaults located at Lee Memory Gardens and removed them to Charlotte. It is undisputed that the removal of the vaults occurred on October 8, 2001, which was well within one year of the filing of Lee's bankruptcy petition on August 29, 2002. On the issue of the solvency of Lee on the date of the transfer, the evidence was not in dispute. According to the testimony of the Trustee's witness, Mr. Tysor, Lee was insolvent in October of 2001, when the vaults were seized by Crown. No contrary evidence was offered by Crown. The remaining element of the section

548(a)(1)(B) claim is whether the debtor received less than a reasonably equivalent value in exchange for the vaults that were removed on October 8, 2001. It is undisputed that Lee was never indebted to Crown, was not a party to the state court proceeding brought by Crown and did not receive any consideration or value in exchange for the vaults that were taken by Crown on October 8, 2001.

For the foregoing reasons, the court concludes that the removal of the vaults by Crown constituted a fraudulent conveyance of property of the Debtor. It follows that such transfer may be avoided by the Trustee pursuant to section 548(a)(1)(B) and that the Trustee is entitled to recover from Crown pursuant to section 550 of the Bankruptcy Code.

II. Recovery Pursuant to Section 550.

Section 550 of the Bankruptcy Code sets forth the remedies that are available when a transfer is avoided under section 548 and against whom such remedies may be imposed. In pertinent part, section 550 provides that to the extent that a transfer is avoided, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer . . . ."

As the party who removed and took possession of the burial vaults, Crown is the "initial transferee" of the burial vaults for

purposes of section 550.  The plaintiff, therefore, is entitled to recover from Crown pursuant to section 550.

The question that remains is the nature of the recovery that should be had by the plaintiff.  Under section 550, the trustee may recover either the property that was transferred or its value. E.g., Halverson v. Le Sueru State Bank (In re Willaert), 944 F.2d 463, 464 (8th Cir. 1991).  The recovery to be allowed lies within the discretion of the court.  Kaler v. McLauren (In re McLauren), 236 B.R. 882, 903 (Bankr. D.N.D. 1999); Kelley v. GMAC (In re Farmer), 209 B.R. 1022, 1024 (Bankr. M.D. Ga. 1997); First Software Corp. v. Computer Assoc. Internat., Inc., 107 B.R. 417, 423 (D. Mass. 1989).  Where, as in the present case, the value of the property is readily determinable and a monetary award will work a savings to the estate or where recovery of the property will not make the estate whole, it is appropriate for the court to allow a monetary recovery for the value of the property.  Aero-Fastner, Inc. v. Sierracin Corp. (In re Aero-Fastner, Inc., 177 B.R. 120, 139 (Bankr. D. Mass. 1994);  Pritchard v. Brown (In re Brown), 118 B.R. 57, 60-61 (Bankr. N.D. Tex. 1990).

In the present case, the appropriate remedy is for the Trustee to recover the value of the burial vaults.  This is so for a number of reasons.  As a practical matter, Crown is not in a position to return the vaults since a number of the vaults have been sold to Crown's customers and hence no longer are available for return to

16

the Trustee.  Apart from this practical impediment, it is clear that a monetary recovery by the Trustee will result in a savings to the estate.  The Trustee is not in the cemetery business and undoubtedly would incur considerable expense in attempting to sell any vaults that were returned to him.  Also, the Trustee would be at a serious disadvantage in trying to sell burial vaults in a marketplace in which burial vaults typically are sold as one component in a package of goods and services offered by cemetery operators.  The likely result of this competitive disadvantage would be severely depressed prices for the vaults.  The purpose of section 550 is to provide a means for making the bankruptcy estate whole when a fraudulent conveyance or other avoidable transfer has been avoided.  Recovery of the burial vaults by the Trustee would not accomplish that purpose under the circumstances of this case. The appropriate relief, therefore, is a monetary judgment for the value of the burial vaults.

The burial vaults in question were a part of the inventory of burial vaults maintained by Lee Memory.  As vaults were needed to conduct burials at Lee Memory's cemetery, vaults were removed from the inventory and used for that purpose.  Some vaults were used for "pre-need" customers who had paid for their burials in advance under pre-need contracts, while other vaults were used for "at-need" customers who had not paid in advance.  However, there was no current retail market for the 383 vaults when they were removed on

17

October 8, 2001.  At the same time, replacement vaults to replenish the vaults that were removed were readily available from the vault manufacturers.  Based upon these circumstances, the court concludes that the proper measure of the value of the burial vaults is their replacement cost at the time of the fraudulent transfer.  There was conflicting evidence regarding the cost of purchasing burial vaults to replace the vaults that were removed in October of 2001.  Crown contended that the cost did not exceed $172.00.  However, that price went back several years to when Crown was purchasing vaults from Heritage.  The plaintiff's evidence included testimony that the replacement cost for the vaults was $300.00 to $310.00 per vault, which reflects an increase of more than 75% in the cost of the vaults two or three years prior to October of 2001.  The court concludes that the more credible evidence of the replacement cost of the vaults is the plaintiff's own description of Lee's assets (Exhibit 13) which reflects a replacement cost of $200.00 per vault.  Crown admitted that 383 vaults were removed on October 8, 2001.  Accordingly, the plaintiff is entitled to recover the sum of $76,600.00 from Crown, representing the value of the burial vaults on the date of their removal by Crown.

     III.  Prejudgment interest.

     The plaintiff also has requested an award of prejudgment interest.  "It is well-settled that bankruptcy courts have discretion to award prejudgment interest in § 547 preferential

transfer actions, and to compute that interest from the date of demand for the return of the transferred funds." Sigmon v. Royal Cake Co., Inc. (In re Cybermech, Inc., 13 F.3d 818, 822 (4th Cir. 1994). The same rule is applicable in a proceeding in which a fraudulent transfer is avoided pursuant to section 548. Hirsch v. Steinberg (In re Colonial Realty Co.), 226 B.R. 513, 526 (Bankr. D. Conn. 1998)("Bankruptcy courts have generally awarded prejudgment interest in fraudulent transfer actions from the time demand is made or an adversary proceeding initiated."). In the absence of evidence of a prior demand by the plaintiff, prejudgment interest is computed from the date of the filing of the complaint. Precision Walls, Inc. v. Crampton, 196 B.R. 299, 305 (E.D.N.C. 1996). Consistent with the intent behind section 550 that the estate be made whole when a fraudulent conveyance is avoided, the court has concluded that the discretion vested in the court should be exercised in favor of allowing the plaintiff to recover prejudgment interest in this case. There being no evidence of when the plaintiff first made demand upon the defendant, the prejudgment interest shall run from July 28, 2004, the date on which the complaint was filed. The rate of interest is controlled by 28 U.S.C. § 1961. Under subsection (a) of that statute, the applicable interest rate is 4.85%, which shall be reflected in the judgment which is being entered contemporaneously with the filing

of this memorandum opinion.[3]

---

[3]Having concluded that the plaintiff is entitled to recover under sections 548 and 550, the court need not address the claims for conversion and aiding and abetting breach of fiduciary duty.

PARTIES TO BE SERVED


Charles M. Ivey, III, Esq.
Robert L. McClellan, Esq.
P.O. Box 3324
Greensboro, NC 27402-3324

Robert S. Adden, Jr., Esq.
831 East Morehead Street
Suite 860, The Addison Bldg.
Charlotte, NC 28202